Good morning and may it please the Court. My name is Rachel Mateo-Boehm and I represent the appellant Courthouse News Service. Time permitting, I would like to address three issues today. Issue number one is the nature of the relief that Courthouse News seeks in this case and the nature of the First Amendment claim. Issue number two is why we believe the District Court erred in abstaining from the merits of this case under O'Shea. And issue number three is why we believe the District Court also erred in abstaining under Pullman. And let me first turn to the nature of the relief that Courthouse News seeks. And that relief is declaratory relief and an injunction prohibiting the clerk of the Ventura County Superior Court from enforcing a policy that is resulting in delays in access to newly filed civil complaints that routinely last for days or even weeks. And that policy is to deny access to new complaints until after they have been processed. In other words, a complaint has been filed and it's sitting right there, but the Ventura clerk won't let a reporter who visits the court every day for the express purpose of reviewing new civil complaints, won't let them look at it until it's been, until information about that complaint has been entered into the computer system, until that's been checked, and until the clerk has decided that the complaint is ready for public viewing. How long is that taking? That is taking anywhere from a couple of days to several weeks. And that is a matter we alleged in our complaint. And so you don't ever get anything the same day? I wouldn't say that we don't ever get anything the same day. I'm trying to figure out on the range, are most of them, because I thought I saw a reference in here, that there were only one or two that you got a few weeks, and most of them came relatively quickly. But do you have any data? Yes, we do have data, and it's in the complaint that we have in our excerpts of record. And particularly, let me see if I can get you a reference, ER 60 is where that complaint begins. And what does it say? It says that it lays out some statistics in particular. But essentially, bottom line, more than 75 percent of complaints are delayed by two or more days. What you may be thinking of is the allegations made in the Ventura clerk's answering brief, where the Ventura clerk disputes this and says, oh, no, the delays are much shorter than what you are claiming. And they do this based on an after-the-fact analysis of computer records, not what the reporter is actually seeing at the court. These are extreme delays. Delays of ---- Is Ventura County the only county you're having problems with? Ventura County is a county that represents problems in the extreme. Well, when you get this information ---- Pardon? I say when you get it, what do you do with it? The reporter takes the information in the complaint, reviews the complaint, and prepares a report of the day's newsworthy new complaints. And where does that go? The report is provided to Courthouse News' subscribers. And how often is the report printed? On a daily basis. What? On a daily basis. No, by a newspaper. How often does your report get printed? My report ---- Courthouse News' report is disseminated via e-mail to subscribers. Yes. How often do they use it? Daily. Do they? Daily. Even if I pick up a newspaper, I can find it? Your question is how often do newspapers use the information that Courthouse News provides? Yes. There are newspaper subscribers to Courthouse News. Well, I know that. But I'll just be candid with you. I can't imagine people being interested in this. But if you can tell me there are some newspapers that print it and are interested, who wants to know? Well, the L.A. Times is a subscriber. They print it? I ---- You don't know? I can't say. Well, they print it when they deem it sufficiently a matter of public interest to print it. If it's like, I don't know, some famous movie star out in Ventura filing a suit against his housekeeper or vice versa, they would pick it up and print it. Well, it's not just newspapers that are subscribers. Most of the subscribers to these reports are lawyers and law firms who have a keen interest in the news of a new civil litigation being filed in the Ventura County Superior Court. This information tells subscribers that a new proceeding, a new public proceeding, is pending before a public institution. And without that information, you don't know. Let me follow up on this a little bit. If they don't get it the same day, but get it two days or three or four days later, what difference does it make? The difference it makes is that, first off, there's no way to know that a new case, that the Court's jurisdiction has been invoked. So, but what difference does it make? It matters because news is news when it happens. No, no, no. Let's take your law firm. What difference does it make to the law firm that they don't get this news instantly? A new piece of litigation has been filed against one of my clients. And one of my clients, that affects them. Yeah. And that affects them. And they need to know about it now. I need to know about it now so that I can start preparing for that piece of litigation. And there's, furthermore, there's case law. Those thoughts must move very fast that you have to know that. This, this, courts. It makes a difference of a day or two days. Courts have traditionally recognized the importance of timely access to new complaints by providing that access. We provided in our complaints. But instantaneously? I mean, we're just, I mean, we're trying to figure out, you know, the reasonableness of this. And I'm particularly interested in the Pullman doctrine and the first element of the Pullman doctrine in particular. But we have to see, I mean, is it critical? What will be chilled if your client doesn't get it, you know, within minutes? I mean, to take it to the other extreme, or within a day? We're not asking for access within minutes. Well, but you're asking for it to happen that day, correct? We're asking a complaint that's been filed that day. We'd like to see it that day. So we can report on it being filed that day. You say you would like it, but give us some substantial reason why it's important. It's important because we can't report on the existence of a new State court proceeding unless we know about it. Because we don't. It keeps essentially the existence of new State litigation secret until you can see the complaint that tells you about it. And furthermore, as to the point about chilling, Your Honor, I want to make the point that as to the first element of Pullman abstention, that does not require chilling. Cases like Wolfson say that. Sotomayor, what about Los Angeles Boyce-Dabatler case? Those cases are not cases, respectfully, to which the courts have found that a First Amendment right of access attaches. So that is under a different construct. Our claim here is that a First Amendment right of access attaches to newly filed civil complaints when you look at the experience and the logic tests. Well, we'll talk about Los Angeles Police for a minute. There they're denying access to a report of ongoing criminal proceedings. Why isn't that relevant? In that, it was not the proceedings itself, I don't believe. It was the documents pertaining to criminal proceedings. It was not a right of access to court cases. It was a different construct. Well, it was a right of access to something in the government's control. And the Supreme Court said it's up to the government whether they release it. All of these questions are great questions for the merits, which we would very much like to get to. But we can't because the Federal court, the district court in this case, has abstained on the basis of O'Shea and Younger. We never got to argue this. Well, you can argue it now. Tell me. I'm not sure you've distinguished Los Angeles Police at all. My answer to your question is that Los Angeles Police is not an access to court proceeding. It is not a case in which the court found that a First Amendment right of access attached. Our contention here is that the First Amendment right of access does attach. And you're talking about both the California and the United States constitutional provisions. I'm talking specifically about the United States Constitution, the First Amendment to the United States Constitution. And I say that. And I point to NBC's subsidiary, the 1999 decision by the California Supreme Court, in which they looked at California's open courts provision and decided that it needed to be construed consistently with the First Amendment. And they further said about the California Constitution that when it comes to rights of access, the California Constitution had not been construed as broadly as the First Amendment. And that's why they needed to look at the First Amendment in that case. Our contention is that the First Amendment and the question of the merits that we'd like to get to is that there is a First Amendment right of access to new civil complaints. Courts have recognized this. And we believe when you apply the experience and logic test, the answer will be there is a First Amendment right of access. I'm going to move on to the abstention, because you're, I mean, really we're on appeal on abstention, and you only have four minutes left. Very briefly, as to younger abstention, we, or rather, abstention under the O'Shea branch of Younger, we believe that the district court erred because the relief we seek would not interfere with the adjudication of State court proceedings. And that is at the heart, and we believe it is required for abstention under the O'Shea branch of Younger. And the flip side of that is the United States Supreme Court's decision in the Gerstein case. Gerstein says when the relief that the plaintiff seeks is ancillary to an adjudicated proceeding itself, that abstention is not appropriate. They're flip sides of the same doctrine. There's no interference here. If you look at the cases in which courts have abstained under O'Shea, it's very different from what we are seeking here. We are seeking an injunction saying, let us see the complaints. Like many other Federal courts, let us see them. In the cases that have abstained under O'Shea, the plaintiffs have been asking for themselves should be done, or things of broad, intrusive relief along this nature, and that is not what we are seeking. As to Pullman abstention, we said the first requirement is not met, because this is a First Amendment case, and that this is a case involving the right of free expression. When you look at the United States Supreme Court's decisions in the Richmond Newspapers case and the Globe Newspapers case, those cases make clear the right of access is a right of free expression, because in order to talk about the government, you have to be able to know what the government's doing. And we don't believe that a requirement of chilling is applicable here, because several of the cases don't say that. Wolfson says the rule against abstention in First Amendment cases doesn't apply here, because First Amendment cases are exactly sort of the sorts of cases the Federal court should be hearing. But if you identify the right of access with the right of First Amendment, you collapse the distinction. And it seems to me the distinction is well established between right to access and right to publish. You don't seem to acknowledge that. I'm sorry. I'm not sure. There's a difference between the right of access and the right to publish. You collapse them. But I am saying that the United States Supreme Court has said that in order to talk about the government, you have to know what the government's doing. And that's what the right of access is grounded in. But doesn't it collapse? I don't think it collapses. Can you point to any case? I think it's Hartford Current, where a Federal court declined to abstain under Pullman in a case involving press seeking access to court documents. The Rivera-Pugue case that we cited in our papers. Also declined abstention under Younger and Pullman. And also, although it didn't involve abstention, the Globe Newspaper v. Pocaskey case. With your permission, I'd like to reserve my last few seconds for a rebuttal. All right. You may proceed. Good morning. May it please the Court. My name is Robert Nave, and I'm appearing on behalf of the appellee, Mike Planet, the executive officer of the Ventura Superior Court. I want to make sure that at some point in the argument today, I can focus the Court on sort of what I think is the big picture question, which is why, which actually answers all of the questions that are raised in these proceedings. But before I do that, I would like to focus on the issue that Judge Noonan mentioned, which is the conflation of a free expression case on the one hand, and an access to documents case on the other. We cited a number of cases that explain the difference. If you go back in Supreme Court jurisprudence, Zemel v. Rusk is one of the early cases, and in that case, the reporter was claiming that the State Department had refused to let the reporter, give the reporter a visa so that he could go to Cuba to report, and was claiming that the denial of the visa amounted to a denial of his First Amendment right of access. And if you, excuse me, first his right to talk about what's going on there. And the Supreme Court said that those are two very different things. No one is preventing the reporter from talking about things that he's already got, and the government has a right to control access. And that's the first of these cases, Zemel was like that. The LAPD, Los Angeles Police Department case, same thing. The question there was whether denial of, or putting conditions on access to addresses violates a reporter's right, you know, to communicate, to express, and the answer was no, because the government has a right to deny access in the first instance. And so the courts, all these courts make this distinction. But hasn't the court carved out an exception for judicial proceedings in many cases, even to the extent where, you know, courts aren't allowed to preclude the press from attending criminal trials, and there's a Nebraska press case, and judicial proceedings occupy a unique space in the jurisprudence. The answer to judicial proceedings is that the court has said there's a First Amendment right of access to attend. But all of these cases distinguish between the right to attend, to listen, and to report about what happens, being the watchdog for the people on the one hand, and the right to documents on the other. That's what the press enterprise test is all about. They say, look, we understand that you've got a right to go. What about these other documents? And the courts have said it's a qualified First Amendment right as opposed to a right to be there and you can't exclude people except in extraordinary circumstances. Okay. So before we get into the same problem as we got in the last half, first half of this argument, let's talk about, I mean, we're talking about merits, right? Let's talk about the elements of Pullman abstention and why you think they apply here. Sure. There are three. The first is that there has to be an issue of local concern. In this case, we've identified several, but all of them have to do with the operations of state courts. And we've explained those in our brief. But in general, the idea that we have, you know, you're interfering with the administration of courts, which the E.T. Court and also the March FOMU case both held, those are important state interests. Doesn't there have to be an interference with the sensitive state policy? And the courts have interfered. Yes, Your Honor. And we have said and the courts have held that the sensitive state policy is administration of state courts. But, I mean, what is the sense? Tell me how the timing of when the reporters get to see the complaints implicates an important sensitive state policy. That was my main point. So let me, if I can, address you to two pieces of the record. The first is the Mike Planet letter where he says, we just can't do this. We can't guarantee first day, first same day access because we don't have the staff, we don't have the money, and more cutbacks are coming. In addition, in our supplemental excerpts to the record, we gave you the Knatzer Declaration, which explains in, I think, pretty thorough detail why the court cannot do that for financial and structural reasons. Well, I guess, I don't see that as a sensitive state policy justifying Pullman. I kind of see that as something that on the merits, I mean, this is like, this is a First Amendment case, and you can certainly have some type of time, place, and manner restrictions. And so in creating any form of injunctive relief, you could say, okay, you know, because of the cutbacks and because of the failure of the Judicial Council to get everything computerized to make access easier and all the things that have been happening with the administration of the courts. And believe me, we appreciate that. Yeah, we all understand that. But, you know, if there is this right that there can be some reasonable restrictions on it, why wouldn't that be something that the court could do without interfering with any sensitive policy issue? With respect, Your Honor, that conflates into whether there's a state issue that can resolve the question. But if I can address the point about whether there's an important state-local issue here, this Court has said that, as I say, administrative of the courts is that. The second is- That's too general and abstract. Because I want to talk about facts here. So the next thing that the Canassar Declaration explains is that because of the number of cutbacks in the courts to guarantee same-day access, you're going to rob Peter and pay Paul. What I'm saying is that the relief they seek isn't necessarily the relief they would get. But why is that a basis for Pullman abstention? Whenever you look at Pullman abstention, the same thing for O'Shea, and the Luckey v. Miller case talks about this, Your Honor. You look at the case at the beginning. And to avoid what Luckey calls, and E.T. quotes it, the unfortunate occasion where at the end of the case you look at the relief and you discover that there's a problem, and then you abstain. You have to look at the beginning of the case and figure out what's going on. So- That's what I'm doing. That's what I'm saying. I'm looking at the beginning and projecting out. Sure. The First Amendment allows reasonable time, place, and manner restrictions. And so if Mr. Planet represents and, you know, testifies, physically we can't perform the duties and get it to you same-day access, then they're not going to get that particular relief. That's talking about the relief, Your Honor. But if you're going to what's the local important interest, as I've tried to identify, one is the administration, but second is finances. Horne v. Flores talks about that, where you are in this case saying robbing people- What does it cost you to-I mean, I don't even-I actually, on the merits, don't think that they're going to be able to get same-day access. I really don't think that, given the situation of the courts and the furloughs and everything else that's going on. But I also don't understand-and, you know, you're talking in abstracts to me about the administration of the courts. I don't know what it would cost for the intake box, for you to allow the reporters to look at the intake box, you know, in two days, a reasonable time period, which is what you're required to do anyway under State law. There's a statute that says that. Your Honor, the only thing that I can tell you is that the purpose of Pullman extension is to ask, does this interfere, and how does it? And I've explained two. First is the administration issue generally, and the second is financial. And on the financial piece, what I've said is that the court has already had to shut down from 5 o'clock to 4 o'clock. They don't accept filings anymore. More recently, the Simi Valley Courthouse is closed entirely, so all of those operations have come over. And the court, and we gave you the executive, the financial director of the court, who explained the numbers, that they're operating at a deficit, and they don't have the capability of complying with a request like that. So there is an issue of- All right. Well, all I'm saying is I think that goes to the merits of whether or not they prevail. I don't think that's the basis for the drill to have abstained in this case. I mean, I just don't see why it's a sensitive issue that making a complaint available to any member of the public, not even the press. I mean, the California statute's not even limited to the press. It's to any member of the public has a right of access to those documents. Your Honor, the only thing I can tell you is what I've already said, and to point out that in the Richardson case, which was the Hawaii case, where the question there was, you know, we want to challenge the procedure by which judges are appointed. Well, that's so entirely different. I don't know how it's entirely different, Your Honor. With respect, all of them have to do with administration of the courts and an intrusion by a federal court into how the court operates itself. Kaufman v. K is another example. Another question I have for you is we're not even talking about the courts, the courts of the state of California. We're talking about this particular branch that somehow isn't able to provide access when other courts in California are. No courts in California are, Your Honor. And to be clear about that, the argument that you heard at the beginning, which is it's right sitting right there and I just want to get it, in Ventura, that's just not true. The whole point of this process is, because of the drop boxes and all the rest of this, is that there's probably 500, 600 pieces of paper that each one of these clerks handles in a day. And in that haystack, there are maybe five to nine needles that are new complaints. And it takes the entire day for the court to find those and sort them. And so that's, with respect, Your Honor, the idea that that doesn't matter when this Court and the United States Supreme Court and Kaufman v. K, the Second Circuit case that has to do with assignment of judges, all say the same thing. That administration of the courts and how the court goes about conducting its business is an important State issue. I respectfully request that you, well, I can't state that position any better, because that's what we view the law as being. I've read the cases. I understand that. And the types of issues that are sensitive issues, like how do you elect or appoint judges, are very different than just making documents available within a reasonable time, as the court is obligated to do so under its own State law. I'd suggest that there are differences, but they're not substantive, Your Honor. All of them have to do with the operation of how a court goes about conducting its business. At a very abstract level. We're talking about something very concrete. This is not abstract. This is pretty concrete. Like, what is a reasonable time within which the... Can you let me finish my question before you start answering it, because I don't know how you're going to answer it if you don't know what I'm going to ask. Apologize, Your Honor. That's okay. I just don't see how asking, I mean, really requiring the Ventura County Superior Court to comply with its own California State law of reasonable access is going to interfere with how it operates. And, Your Honor, we've cited those cases. The other case I'd refer you to is the Lipster case out of the Third Circuit, which has to do with whether a clerk can marry a sheriff. Another case. All of them... But that's a whole... I mean, that's a very substantive thing. That's not providing access to court documents. In respect, that's... In one respect... You know what? If California had actually been able to get that electronic processing going and hadn't spent so much time and money wasting it to no effect, this wouldn't even be an issue. Your Honor, all I can tell you is what I've repeated. If I could make one other observation, which has to do with O'Shea, to the extent now that the court were to say, all right, and again, you have to look at the results of this injunction, whatever that injunction is. And the request in the complaint was same-day access unless you conduct a case-by-case hearing to determine whether or not a particular complaint didn't have to be filed in advance. That was in the prayer. That was in the body of their complaint. And it's all based on the concept in paragraph six of the complaint where they said, where the plaintiffs allege that the effect of not giving same-day access is to seal the file. So they compare these cases to sealing. And so that's why the prayer says, so we want to have a case-by-case review. And, Your Honor, with respect, on that issue, that then is... I would agree with you on the case-by-case review, but I think they backed off  Well, again, I can only... In their briefing. state, Your Honor, and tell you what the district court was looking at at the time the district court ruled. And the district court was pretty clear that he read the complaint the same way, and they didn't back off that in the trial court. So the best I can tell... Frankly, Your Honor, if you recall, one of the quotes that we gave you in our brief was one of the footnotes in their case. And if you look at the very last footnotes in the appellant's brief, they acknowledge that there is a possibility of federal supervision of the state courts. They acknowledge it again in their own brief. So there's a potential for interference, which, again, goes to the issue. Does anyone have any other... No? Okay, thank you, counsel. Thank you. Very briefly, we do dispute that providing timely access in the manner that we seek in the complaint costs any money. And respectfully, we do believe this is a matter for the merits and one we'd like to argue in the merits. And I would point the Court to the Ninth Circuit's 1983 decision in Associated Press v. U.S. District Court. And in that case, and that case involved an issue of fair trial rights under the Sixth Amendment, the Ninth Circuit said, look, even a delay of 48 hours in existence, and it invokes First Amendment considerations. And that is our point here. The other point is that I did look at the LAPD, my notes on LAPD while I was sitting down. That case found that there was no First Amendment right of access to police arrest records. Our case involves civil court complaints. Respectfully, we believe there is a First Amendment right of access to those complaints. All right. Does anyone have anything further? Okay. Thank you very much. Courthouse Seasurface v. Planet will be submitted.
judges: Noonan, Wardlaw, Murguia